The next case this morning is number 519-0386, People v. Black. Arguing for the appellant, Rodney Black, is Ian Barnes. Arguing for the appellee, People of the State of Illinois, is Jennifer Camden. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Okay, Mr. Barnes, are you ready to proceed? I am, Your Honor. Thank you. Okay, you may proceed. Thank you. May it please the court and my colleague from the state, there are some errors in our justice system, Your Honors, that are so egregious and so intolerable that they warrant reversal without regard to prejudice. And one of those errors infected Mr. Black's case in the form of the denial of his constitutional right to represent himself. Rather than honor the repeated invocations that Mr. Black made, the trial court disregarded the law and disregarded Rule 401, and for that reason, this case must be reversed. In turn, I'd like to address that issue as well as the question of whether the state met its burden regarding the cause of death issue for the unborn child. And although there are a number of other issues enumerated in the briefs, including whether Mr. Black was improperly subject to mandatory natural life, I'd like to stand on the briefing unless Your Honors have any questions. Turning to the self-representation issue, the trial court's abuse of discretion in this case was really made manifest by its complete failure to comply with Rule 401 and give the admonishments that are required by Rule 401 following Mr. Black's invocation, and that led to the complete denial of his right to represent himself. We have Rule 401, which says when a criminal defendant waives counsel, the trial court is required to give the admonishments to make sure that the defendant understands the possible penalties, the nature of the charges, and that he has a right to counsel. And against that backdrop, the trial court's error here is really clear, because the record is devoid of any admonishments that are required by Rule 401. They simply were never given, period. And we can look to the recent Rodriguez-Aranda case that was part of my motion that is really instructive as to this issue. In that case, we have a defendant who was diagnosed with a mental health issue, there was a language barrier, he required the assistance of an interpreter, and like Mr. Black, he made a conditional invocation of his right to represent himself. He asked for alternative counsel, and if that wasn't possible, to represent himself. And the appellate court said that was a clear and unequivocal invocation. Simply because it's conditional does not mean it's equivocal. And here we have Mr. Black repeatedly, in plain English, in unambiguous terms, saying he would like to represent himself. That is far clearer and far more unequivocal than what happened in Rodriguez-Aranda. And also in that case, you have the trial court actually engaging in the admonishments that are required by Rule 401. In Rodriguez-Aranda, the trial court admonished the defendant about the nature of the charges, the possible penalties, and it went into in-depth discussing the qualifications of the public defenders. It cautioned the defendant that he would be going up against trained state's attorneys who are experienced and licensed, that he wouldn't be receiving any help from the trial court, and the appellate court still nevertheless said this wasn't good enough. That the case needed to be reversed, that there needed to be a new trial. And in contrast, we have Mr. Black who received none of these admonishments, not a single one, as are required by the rule. And instead, we have the trial court essentially throwing up roadblocks. The trial court saying, file a motion. And in fact, the seems to indicate that the trial court is balancing Mr. Black's right against the quality of representation he was receiving, and that is simply not consistent with the law. That is not a factor to be considered. The only thing that should have happened was after Mr. Black invoked his right to represent himself, that should have triggered the excuse me, and there is nothing that says the trial court can ignore the invocation and simply hope it goes away. And Supreme Court rules, as your honors are aware, are not aspirational. They are not optional. They are mandatory. And when Mr. Black made what is undoubtedly a clear and equivocal invocation of his right, the only thing that should have happened is the trial court admonishing him pursuant to rule 401, and that did not happen. And so for that reason, the trial court abused its discretion by failing to do what is mandatorily required by the Supreme Court rules. And in doing so, deprived Mr. Black of his right to represent himself because the trial court cannot accept that waiver of counsel without doing these admonishments. So we have a trial court that is not following the rules, and as a result, Mr. Black was unable to represent himself. So on that basis, I would ask this court to reverse and remand for a new trial, and that brings me to the alternative issue I wanted to discuss, which is the reasonable doubt issue. At trial, the state's proof regarding cause of death of the unborn child came from the medical examiner, Dr. Heidingsfelder, and his testimony was, or his opinion rather, was that after Letitia Reidelberger passed away, she stopped circulating oxygenated blood to the fetus, and therefore the fetus necessarily died. But he admitted that he did no autopsy of the fetus. He had no actual factual basis to support that opinion, and he also admitted that Letitia Reidelberger had in her system a number of drugs, including Valium, a metabolite of Valium, THC, which is the active ingredient of marijuana, naproxen, ritalin, and finally methamphetamine. And there was no testimony from Dr. Heidingsfelder as to what the impact of those drugs were on the fetus, because he did not do a postmortem of the fetus. And I think, Your Honors, if we were here on a first-degree murder case, and the medical examiner had said that the victim died of X and admitted he did not actually do an autopsy to confirm that the cause of death really was X, we would all be rightly skeptical of that, and this is really no different. Dr. Heidingsfelder did an autopsy of Letitia Reidelberger. He did not do an autopsy of the fetus to confirm that it had actually died because of a lack of oxygen. So we have a jury that has accepted an opinion that has no factual basis to it, has no actual investigation to support it. It was simply his supposition, and that, Your Honors, is not a rational outcome. No rational trier of fact can say simply because the mother died that that was the cause of the fetus's death, particularly in this case when there is another readily apparent possible cause of death. So on that basis, I would ask this court to reverse Mr. Black's conviction for intentional homicide of an unborn child and remand for resentencing, and then alternatively, for all the reasons enumerated in the briefing, remand for a new trial or, because of the other sentencing issue, also I don't have anything further at this time. Justice Welsh? No questions. Justice Moore? No questions. Okay, thank you, Mr. Barnes. Thank you. Ms. Camden? Thank you, Your Honor. May it please the court, counsel? With regard to the issue of self-representation, review is for plain error here, and in this case, indulging in every reasonable presumption against the waiver of counsel, the defendant's words were not a clear and unequivocal request for self-representation, and even if they were, the defendant then explicitly acquiesced to the court ruling on the matter at a later date, and then by his actions, he subsequently abandoned the matter and acquiesced to continued representation by counsel. Now, the appellate court in the Rainey case stated that words may be clear while still being equivocal, and here there are two reasons why that was the case. First, the defendant's words, unlike in Rodriguez-Aranda, were not conditional, but they were equivocal in light of his prior words and conduct. The context here, which the trial court had previously explicitly considered at this January 17th hearing, reflected impulsiveness, gamesmanship, and vacillation, or else the court would not have abused its discretion if it had interpreted them in that way, and the second reason that the defendant's words were equivocal is that they were made in the context of disruptively arguing with the court when a ruling did not go his way, and the state cited authority showing that such frustrated outbursts are not clear and unequivocal requests for self-representation. The defendant argues that in the Rodriguez-Aranda case the admonishments were given, but here no admonishments were given because the defendant agreed to consider the issue at a future date. The defendant argues that the court either denied or ignored his request, but the court didn't deny or ignore any request. The court exercised its discretion to take control over the courtroom while the defendant was being disruptive and stated that it would address the matter at the next hearing, and the defendant agreed to this, so he's stopped from complaining that the trial court did not immediately respond to his disruptiveness by admonishing him pursuant to Rule 401, where he acquiesced to addressing the matter at a later date and then had nothing further to say at that January 17th hearing when invited to speak further. Also, the defendant was not required to raise the issue at the next court date because he'd already raised it on January 17th, but again at that hearing he agreed when the court said it would take up the matter at the next hearing and then after the hearing the defendant did not file a motion regarding self-representation as he said he would and as the court had invited him to do, and then at the next hearing the court gave the defendant multiple chances to speak and the defendant didn't raise the issue. Instead, he raised a separate issue with counsel which the court resolved to his apparent satisfaction that, by the way, that issue was regarding counsel showing him discovery, which appears to have been the defendant's main complaint against counsel, and after that issue was resolved at that next hearing, the defendant never sought a ruling on any request for self-representation and never raised the issue again in the two years that passed between that hearing and the date of trial, and on that record the defendant acquiesced to the counsel's continuing representation of him and abandoned any request for self-representation. The court did not conclusively deny a request which would have satisfied the defendant's argument that he didn't need to raise it again under the Burton case, but that's not what happened here. The defendant never sought a ruling. Moving on to Issue 5, the defendant, sorry, the state in the intentional homicide of an unborn child count had to prove causation, and here, based on the evidence and reasonable inferences flowing from it which the jury was not required to disregard, the jury could rationally conclude that this 13-week-old fetus was alive when Letitia was stabbed, which caused them both to die. The evidence of causation included the fact that the fetus had no macerative changes, which would have begun if the fetus had died even three to six hours before the murder. Also, Letitia, at the time that she was stabbed, believed herself to be pregnant because she told this to an onlooker who rushed to her aid and was attempting to gather information from her to pass along to the paramedics. Now, the defendant's argument is that because the doctor did not perform an autopsy or otherwise explain why he believed that this fetus died of oxygen deprivation, his opinion that the fetus died in that manner was insufficient, but the state didn't have to prove that the fetus died of oxygen deprivation and the state didn't have to provide any substantiated opinion on the particular biological process that caused this fetus's death. Here, even without an autopsy, there was evidence that the defendant caused the fetus's death, and that is what the state had to prove and what the state did prove. The appellate court in the Campos case, which is cited in the People's Brief, noted that extensive medical testimony is not always needed to show the relationship between the death of the fetus and the mother. Moreover, in this case, the doctor did explain why he believed that this fetus died of oxygen deprivation. He stated that this, quote, necessarily happens when a woman dies and her fetus is still alive and not delivered, so that's a biological fact. It's not a matter of opinion. Also, the doctor did explain his factual basis for believing that this fetus was alive when she was stabbed, which is the lack of macerative changes, which would have begun and would have been evident to him if the fetus had died even three to six hours before she was stabbed to death. The defendant does not attack that opinion as unsupported because the doctor performed that external examination and repeatedly noted the complete lack of those macerative changes. Now, the defendant argues that the fetus could have died of drugs, but evidence of unspecified levels of drugs in Letitia's body, which were not fatal to her, did not create reasonable doubt about the cause of this fetus's death, where the doctor stated only that any drug would have long-term effects on any fetus, not that these drugs were present in levels that could have killed the fetus just an hour or two before Letitia died. And by the way, that window of time, an hour or two, is the window of time that the doctor provided and could not rule out as to whether the fetus had died one to two hours before, and that's because, again, the macerative changes would have been evident at hour three or between hours three and six, but the jury was not required to elevate that testimony to the level of reasonable doubt, where there was no evidence supporting speculation that the fetus just coincidentally happened to die an hour or two before Letitia was stabbed to death. The phrase beyond reasonable doubt does not mean beyond all doubt, and that's the standard to which the defendant is attempting to hold the state here. I'd also note that in the state's answer brief, the state cited other cases in which the that a defendant caused the fetus's death, even if other causes of fetal death were possible, and even if there was evidence of alternative causes of death or potential time of death. Also, in my remaining moments, I'll address the defendant's argument that there was a conflict in the evidence regarding the time of death, regarding the window in which the fetus could have died, but there is no but in fact there was no conflict, because the doctor stated that although the drugs did not cause the fetus to die a day or two before, he also did not see the changes that would have occurred if it had died even three to six hours before. So the window of time in which he could not determine whether the fetus had died before Letitia was one to two hours, not one to two days, because again he didn't see those changes. So for these reasons, and the reasons stated in the people's answer brief, the state will respectfully request that the court affirm the defendant's convictions and sentences, unless the court has questions about either of these issues or the other four issues not addressed here today. Ms. Camden, I have a question. You seem to argue that it was somehow incumbent upon the defendant, after he made these representations about representing himself, to then bring it up again at a or to somehow create a pleading. Do you believe that the burden is on the defendant to do that, or do you think that once a statement is made, it's self-executing with regard to the admonishments? Well, Your Honor, based on the Illinois Supreme Court case of Burton and the other cases addressed in the people's answer brief, such as the Spann case, a defendant can abandon a prior mention of a request for self-representation or acquiesce to continuing representation of counsel, and he can do that by his conduct. So the defendant hasn't cited any case showing that in such a case as this, where the court does not conclusively deny... Now, let me answer this. If the court had conclusively denied the defendant's request for self-representation, then the defendant would have no burden to raise it again or to ask for a ruling. But in cases such as the Spann case, and also in an unreported case cited in the people's answer brief, it's dispositive that the defendant does not seek a ruling, and that's what happened here. And that's even if the defendant's words were clear and unequivocal, which the state is arguing that they were not, even at the outset. So that also answers the question of whether the court had any duty here. What about the time span, Ms. Kamnan? Wasn't there a period of two years between this conversation and when the trial took place? How significant is that? I believe it is, Your Honor, because again, a defendant may acquiesce to continued representation by counsel, and here, where he did not renew or raise the issue again, and where he, by his actions, did acquiesce to continued representation by counsel for two years and never raised it again, even in some additional pro se letters to the court complaining about other aspects of counsel's representation, again, by this context, which the courts have held that the trial court could take into account, and that's context both before any request and after any request. All of that context may be considered when considering whether the trial court clearly and obviously abused its broad discretion in interpreting the defendant's words here. So you're saying that the admonishments don't have to be given if you look at the context and there was, in the court's view, acquiescence or a chance to raise it again. The admonishments aren't self-executing at that time. Not in this case where the defendant explicitly acquiesced to not proceeding on any such request on January 17th, no. What do you mean, specifically acquiesced? Where he explicitly, where the court stated, and let me get the transcript of this exchange is on pages five and six of the people's answer brief, where the defendant stated, I'll represent myself. I'm not taking Nathan Roland as a lawyer. The court stated, quote, well, we will deal with that at the next hearing. The defendant stated, okay. And you think that's enough for the court not to give some admonishments. That's what I'm asking. You don't think that they're self-executing when the defendant says, I'm going to represent myself if I have to have this lawyer. You don't think the admonishments, you don't think the case law requires that the admonishments be given at that time. Not where he acquiesces to take up the matter at a later date, Your Honor. And not where the defendant's words at the outset were not clear and unequivocal as the state has separately argued. What if they were clear and unequivocal? I believe that in that case, a defendant could still agree to consider the matter at a later date. And also in such a case, a request can still be abandoned. And a defendant in that situation could still acquiesce then subsequently to continued representation by counsel as he did here. Okay. Thank you very much, Ms. Camden. Mr. Barnes, do you have some response to the state's arguments? I do, Your Honor. Thank you. Um, I think just at the outset, the state continually refers to Mr. Black's conduct as acquiescence. And I think that is doing some violence to what actually transpired here, accounting for the power imbalance. You have a criminal defendant who is indigent, who has none of the power, and a trial court who has all of the power. And you have someone who said six times in a pretty short span of time, something to the effect of, I will represent myself. The trial court begins discussing scheduling with the attorneys. It's clear that the trial court is disregarding his request. So when Mr. Black says, okay, in response to the trial court statement, we'll deal with it on the next court date. We're looking at someone who clearly believes the trial court is disregarding his request. It's rolling off the trial court. It's being shrugged off. That is not the same as if perhaps we had the trial court giving Mr. Black the admonishments and saying, why don't you think about it for a month? And we'll come back and we'll talk about it again. And then when Mr. Black comes back, says nothing. That's not what happened here. We have someone who very clearly, very unambiguously says over and over, I want to represent myself. And the trial court does not admonish him. And as I said earlier, the rule is mandatory. There's nothing in the rule that says the trial court can simply decide that the admonishments aren't necessary. When that waiver happens, those admonishments are mandatory. And what about the question by Justice Moore, the fact that two years passed between this conversation and trial and there was nothing more done by your client? Sure. I think that weighs in Mr. Black's favor in a couple of ways. The first is that speaking to that same power imbalance I was just talking about, he didn't bring it up again because it was clear that the trial court really didn't want to entertain it. And it was saying file a motion because that was just the trial court's way of making this go away. But the other issue here is there's no question that this was, you know, it wasn't a request made on the eve of trial that was going to prolong trial. It wasn't going to cause delays. This was made well in advance of trial. So the idea that there's any gamesmanship or some sort of manipulation happening here really can't be said. Go ahead, Judge. I think that counsel for the state indicates that there's case law indicating that the overall circumstances can show that there is an abandonment. How do you address that argument? Well, the issue I think boils down to the fact that Mr. Black made this request pretty plainly and never brought it up again. Well, is it plain when he says I don't want Mr. Rowland? Not if I have to have Mr. Rowland. Yes, I do, Your Honor, because that's exactly the sort of conditional invocation that we're talking about in Rodriguez-Aranda where the defendant said, I want a different attorney, but if you're not going to give me a different attorney, I'll represent myself. There's nothing unclear about that. There's nothing equivocal about that. It's just his preference was I want a different attorney. And when the trial court wasn't willing to do that, his fallback was then I will represent myself, as Mr. Black said here. So I don't think there's any ambiguity there in terms of what Mr. Black wanted. Ultimately, he clearly wanted to be rid of Nathan Rowland, whether that was through another attorney or through his own representation of himself. But his statements were clear. What he wanted was clear. And Rule 401 requires the admonishments. There's really no wiggle room in Rule 401 that says the trial court has discretion to give these admonishments. They are mandatory. And with my last remaining little bit of time, I want to touch on the idea that Mr. Black was disruptive because Rodriguez-Aranda touches on that as well. That was one of the bases for which the trial court relied on to deny him the right to represent himself. And the appellate court said, when we're talking about disruptive behavior, we're talking about something that rises to the level of removing the defendant from the courtroom. That kind of behavior is what we're talking about when we say disruptiveness can be a bar to self-representation. And that's not what we have here. We have someone who was interrupting the trial court, to be sure, but only to invoke a sacred fundamental right that was disregarded. So based on that, I would ask this court to reverse and remand for a new trial. Okay, thank you very much, Mr. Barnes and Ms. Camden for your arguments here today. The matter will be taken under advisement and we will issue an order in due course. The court is now in recess.